**Donald Paul GREENE,
Petitioner–Appellant,**

v.

**Louis WAINWRIGHT and the Attorney General of the State of Florida, Jim Smith, Respondents–Appellees.**

**No. 79–3066.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1981.

---

Barry L. Zisser, Walter L. Robison, Robert E. Cosby, Jacksonville, Fla., for petitioner–appellant.

Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, Fla., for respondents–appellees.

Before VANCE, FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

VANCE, Circuit Judge:

Donald Paul Greene was convicted in state court in Duval County, Florida, of sale or delivery of a controlled substance. Having exhausted his state remedies, he applied in federal district court for a writ of habeas corpus, claiming violations of his sixth amendment right to confrontation. The case was referred to a magistrate, who recommended that the petition be granted. After the respondent filed objections, the district court reviewed the case de novo and dismissed the petition with prejudice. Petitioner appeals, and we reverse.

I.

Donald Greene was a patrolman for the Jacksonville Sheriff's Department at the time of his arrest. His conviction stems from a sale of marijuana on May 10, 1975, to his friend Ronald Kennerly who was also an officer in the Jacksonville Sheriff's Office.

Kennerly was the state's key witness. According to Kennerly's testimony, he arranged with Greene to purchase the marijuana. The two men went to the home of Kathy Lyons, Greene's girl friend and also a friend of Kennerly's. Greene unlocked the door and led Kennerly to a sewing machine, from which he removed an envelope of marijuana. He gave the envelope to Kennerly, took twenty dollars from him, and deposited the money in the sewing machine. The two then departed.

Greene's testimony differed materially from Kennerly's. He admitted going to Lyons' apartment with Kennerly. In his version, however, it was Kennerly who unlocked the door, led the way to the sewing machine, and exchanged the money for the envelope. Although Greene admitted realizing that the envelope contained marijuana he denied any role in the sale.

Both sides presented some supporting evidence. Ultimately, the case came down to a contest of credibility. Was Greene or Kennerly telling the truth? It is in this context that we examine Greene's sixth amendment claim.

## II.

In deposing Kennerly before trial, Greene's attorney asked him several questions about his mental condition and about certain bizarre criminal actions in which Kennerly was allegedly involved, such as shooting out the windows of a bar.[1] The state attorney representing Kennerly instructed him not to answer the questions. Greene's attorney also sought to elicit information regarding these events by subpoena and deposition of the Commanding Officer of Internal Investigations of the Jacksonville Police and of State Trooper Howard, Kennerly's roommate. Once again, the state attorney instructed them not to answer. The state then filed a motion in limine to prohibit the defense from asking any questions during trial except ones pertaining to the events of the marijuana sale and to the chain of custody after the sale. The state relied on the authority of *Williams v. State*, 110 So.2d 654 (Fla.), *cert. denied*, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959):

> In view of our analysis of the precedents and for the future guidance of the bench and bar, the rule which we have applied in affirming this conviction simply is that evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion.

*Id.* at 663.[2] Application of the *Williams* rule to exclude evidence which the defendant wishes to introduce is quite singular. Florida courts generally admit evidence regarding any pending charges or investigation of a prosecution witness.

> The law is clear that if a prosecution witness is presently or recently under actual or threatened criminal charges or investigation leading to such charges, the person against whom the witness testifies in a criminal case has an absolute right to bring those circumstances out on cross-examination or otherwise so that the jury will be fully apprised as to the witness' possible *motive* or self-interest with respect to the testimony he (or she) gives.

*Cowheard v. State*, 365 So.2d 191, 193 (Fla. Dist.Ct.App.1978), *cert. denied*, 374 So.2d 101 (Fla.1979) (emphasis in original) quoting *Blanco v. State*, 353 So.2d 602, 604 (Fla.Dist.Ct.App.1977). *See, e. g., Kufrin v. State*, 378 So.2d 1341 (Fla.Dist.Ct.App. 1980); *Holt v. State*, 378 So.2d 106 (Fla. Dist.Ct.App.1980).

In the case before us, however, the trial court granted the state's motion:

> Neither the State nor Defense will be allowed to present evidence in the trial other than evidence which, either directly or indirectly, relates to actions occurring on the 10th of May, 1975, or any actions thereafter which relate directly to testimony or physical evidence as concerns the 10th of May, 1975.

The court did not explain the basis of its ruling. At trial, the state argued that the order should serve to block defendant's "attempt to smear the reputation of this man [Kennerly] and put him in effect on trial here." We must determine whether this restriction on defendant's right of cross-examination unconstitutionally deprived him of his right of confrontation.

## III.

A defendant's sixth amendment right "to be confronted with the witnesses against him" applies to defendants in state trials as

---

1. Greene raises as a second point of appeal that the district court erred in excluding certain newspaper articles included in his supplemental memorandum. These articles describe Kennerly's alleged actions. Appellees maintain that the point was not preserved for appeal. In view of our disposition of the case, we do not reach this issue.

2. Now codified at Fla.Stat.Ann. § 90.404(2) (West 1979).

well as federal. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right of confrontation includes the right of cross–examination. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Noting that its earlier decisions had described cross–examination as the "greatest legal engine ever invented for the discovery of truth," the Supreme Court stated in *Ohio v. Roberts*, —— U.S. ——, 100 S.Ct. 2531, 2537 n.6, 65 L.Ed.2d 597 (1980) that "one critical goal of cross–examination is to draw out discrediting demeanor to be viewed by the factfinder." "[T]he cross–examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross–examiner has traditionally been allowed to impeach, *i. e.*, discredit, the witness." *Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. at 1110.

To be sure, cross–examination must be relevant. *United States v. Love*, 599 F.2d 107, 108 (5th Cir.), *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312 (1979), and have some probative value, *Cloud v. Thomas*, 627 F.2d 742, 744 (5th Cir. 1980). Nevertheless, "the presumption favors free cross–examination," *United States v. Fontenot*, 628 F.2d 921, 924 (5th Cir. 1980), and "[c]ross–examination of a witness in matters relevant to credibility ought to be given wide scope," *United States v. Williams*, 592 F.2d 1277, 1281 (5th Cir. 1979).[3]

As we have remarked, Kennerly was the chief witness against Greene. His credibility was crucial to the state's case. "Where the witness the accused seeks to cross–examine is the 'star' government witness, providing an essential link in the prosecution's case, the importance of full cross–examination to disclose possible bias is necessarily increased." *United States v. Summers*, 598 F.2d 450, 460 (1979). *Accord, United States v. Brown*, 546 F.2d 166, 170 (5th Cir. 1977). The trial judge has discretionary authority to restrict the scope of cross–examination. However, "this discretionary authority . . . comes into play only after there has been permitted as a matter of right sufficient cross–examination to satisfy the Sixth Amendment." *United States v. Bass*, 490 F.2d 846, 858 n.12 (5th Cir. 1974), *also quoted in United States v. Vasilios*, 598 F.2d 387, 389 (5th Cir.), *cert. denied*, 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979) and *United States v. Elliott*, 571 F.2d 880 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). *Accord, United States v. Callahan*, 551 F.2d 733, 737 (6th Cir. 1977); *United States ex rel. Santiago v. Vincent*, 423 F.Supp. 103, 106 (S.D.N.Y.1976), *aff'd*, 573 F.2d 1295 (2d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Here, the ruling in limine prohibited, as it was designed to, any exploratory inquiry by defense counsel into Kennerly's possible bias or motive.[4] This complete bar violates the Constitution.

3. The Supreme Court has observed:

Counsel often cannot know in advance what pertinent facts may be elicited on cross–examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. . . . It is the essence of a fair trial that reasonable latitude be given the cross–examiner, even though he is unable to state to the court what facts a reasonable cross–examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. . . . To say that prejudice can be established only by showing that the cross–examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

*Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931) (citations omitted). "Although *Alford* involved a federal criminal trial and we reversed because of abuse of discretion and prejudicial error, the constitutional dimension of [the] holding in *Alford* is not in doubt." *Davis v. Alaska*, 415 U.S. at 318 n.6, 94 S.Ct. at 1111 n.6.

4. Petitioner was able to have Kennerly admit that he had been arrested the day after the sale. The state then brought out that this arrest occurred while Kennerly was in his undercover capacity. No further questions by petitioner were permitted. Far from remedying the constitutional violation, this brief departure from the in limine ruling may have further preju-

We can conceive of at least two theories of impeachment that defendant might have proposed had he been granted his constitutional rights. First, he might have argued that Kennerly was testifying to avoid prosecution for other illegal activities. "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness." *United States v. Crumley*, 565 F.2d 945, 949 (5th Cir. 1978). Whether or not such a deal existed is not crucial. *United States v. Mayer*, 556 F.2d 245, 249 (5th Cir. 1977). What counts is whether the witness may be shading his testimony in an effort to please the prosecution. "A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception." *Burr v. Sullivan*, 618 F.2d 583, 587 (9th Cir. 1980). *See United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976).

Second, Kennerly's alleged actions might have cast doubt on his mental stability. The relevance of evidence regarding Kennerly's sanity can hardly be doubted:

> The readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth .... It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing.

*United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977) (citation omitted). The events in question occurred within the same general time period as the marijuana sale. *Cf. United States v. Diecidue*, 603 F.2d 535, 551 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63

L.Ed.2d 781 (1980) (evidence of mental incapacity inadmissible when it related to period twelve years before crime). We are not called upon here to deal with the appropriate limits of such evidence, such as whether hospital records or expert testimony would be admissible. *See, e. g., United States v. Hiss*, 88 F.Supp. 559 (S.D.N.Y.1950). In this case, petitioner was denied the opportunity to present evidence of any sort, including by cross–examination, regarding Kennerly's alleged recent history of mental instability. This absolute prohibition exceeds any possible trial court discretion. *See generally* C. McCormick, *Evidence* § 45 (2d ed. 1972); Annot. 44 A.L.R.3d 1203 (1972).

We do not know whether, on cross–examination, petitioner would have elicited testimony supporting either of these theories. Nor do we know whether, even had such testimony been elicited, the jury would have been persuaded to disbelieve Kennerly. The point is that it was for the jury to make this determination. The order in limine prevented them from doing so.

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [Kennerly's] testimony which provided "a crucial link in the proof ... of petitioner's act." ... The accuracy and truthfulness of [Kennerly's] testimony were key elements in the State's case against petitioner.... On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus de-

---

diced Greene. "On the basis of the limited cross–examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness ...." *Davis v. Alaska*, 415 U.S. at 318, 94 S.Ct. at 1111.

nied the right of effective cross–examination which " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' "

*Davis v. Alaska*, 415 U.S. at 317–18, 94 S.Ct. 1110–11. *See Gordon v. United States*, 344 U.S. 414, 422–23, 73 S.Ct. 369, 374–75, 97 L.Ed. 447 (1953).

We reverse and remand with instructions to issue the writ of habeas corpus for which appellant petitions.

REVERSED AND REMANDED.