15-1965
*United States v. Pendergrass*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 28th day of April, two thousand sixteen.

Present:    ROBERT A. KATZMANN,
                        *Chief Judge*,
               JOSÉ A. CABRANES,
                        *Circuit Judge*,
               LEWIS A. KAPLAN,
                        *District Judge*.[*]
_____

UNITED STATES OF AMERICA,

                        *Appellee*,

                        v.                                                        No. 15-1965

TERRENCE PENDERGRASS,

                        *Defendant-Appellant*.

_____

For Appellee:                    DANIEL C. RICHENTHAL (Lara K. Eshkenazi & Michael A. Levy, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

_____

[*] The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

1

For Defendant-Appellant:    JAMES G. FRANKIE, Frankie & Gentile, P.C., Mineola, NY.

Appeal from the United States District Court for the Southern District of New York (Abrams, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Terrence Pendergrass appeals from a judgment of conviction entered on June 18, 2015 (Abrams, *J.*), on one count of willfully violating the constitutional rights of an individual, Jason Echevarria, in violation of 18 U.S.C. § 242. Echevarria was an inmate housed in a mental health unit of the New York City Department of Correction on Rikers Island, where Pendergrass was working as the probationary captain on duty on August 18, 2012. A jury found that Pendergrass was deliberately indifferent to Echevarria's serious medical needs after Echevarria ingested a ball of soap that caused him to suffer physical distress and eventually led to his death. Pendergrass challenges his conviction and sentence on three grounds: (1) that he received ineffective assistance of counsel; (2) that the district court improperly instructed the jury; and (3) that his sentence is substantively unreasonable. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

We first address Pendergrass's ineffective assistance of counsel arguments. We have generally expressed a "baseline aversion to resolving ineffectiveness claims on direct review." *United States v. Khedr*, 343 F.3d 96, 99–100 (2d Cir. 2003) (quoting *United States v. Williams*, 205 F.3d 23, 35 (2d Cir. 2000)). Unlike a claim brought pursuant to a 28 U.S.C. § 2255 motion, the record on direct appeal typically has not been developed "precisely for the object of litigating or preserving the claim and [is] thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 505 (2003). In particular, we have noted that "the allegedly

ineffective attorney should generally be given the opportunity to explain the conduct at issue."

*Khedr*, 343 F.3d at 100. Nevertheless, we may hear such a claim on direct appeal when the

"resolution is beyond any doubt or to do so would be in the interest of justice." *Id.* (quoting

*United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (internal quotation marks omitted)).

Pendergrass's ineffective assistance of counsel argument is twofold. He first argues that

his trial counsel was ineffective because he failed to call witnesses that, Pendergrass asserts,

were material to his defense. For example, Pendergrass argues that trial counsel should have

called a former inmate, Jonathan Cabrera, whose testimony may have undermined the credibility

of one of the prosecution's key witnesses. He also asserts that counsel should have called the

correction officers who worked the shift following Pendergrass's to testify whether anyone

notified them of Echevarria's medical condition. However, given the lack of information we

have about how these individuals would have testified or whether trial counsel had legitimate

reasons for not calling them to testify, we cannot determine on the basis of the record before us

whether or not Pendergrass's "counsel's representation fell below an objective standard of

reasonableness," nor whether he was prejudiced by any such deficiency. *Strickland v.

Washington*, 466 U.S. 668, 688, 693 (1984). Accordingly, we decline to rule on the ineffective

assistance of counsel claim as it relates to trial counsel's failure to call certain witnesses.

By contrast, we will consider Pendergrass's second ineffective assistance of counsel

claim. Pendergrass argues that trial counsel was ineffective because he failed to object prior to

the end of trial to the testimony of a government witness on the basis that the witness's testimony

violated the principles established in *Kastigar v. United States*, 406 U.S. 441 (1972). He

requested a *Kastigar* hearing after trial and the district court denied the request, ruling that

Pendergrass was not prejudiced by any error. Accordingly, the record was fully developed below

3

with respect to the second prong of the *Strickland* ineffective assistance of counsel inquiry. *Strickland*, 466 U.S. at 693.We therefore reach the merits of this argument. *See United States v. Hasan*, 586 F.3d 161, 170 (2d Cir. 2009).

Pursuant to *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Kastigar*, the government may not use in a criminal prosecution any statements that were made by an employee during an internal investigation and subject to a grant of immunity, nor any information derived from such statements. *See generally Kastigar*, 406 U.S. at 448–53; *see also United States v. Nanni*, 59 F.3d 1425, 1431 (2d Cir. 1995). Prior to the indictment of this case, the Department of Correction conducted an internal investigation into Echevarria's death. As part of that process, Supervising Investigator Germaine Difo interviewed Pendergrass on June 19, 2013. Difo later testified at trial about the general operation and practices of the prison, about the duties of correction officers and captains, and about his personal observations of Echevarria's cell on the morning of August 19, 2012. He also testified about how to identify the supervisor's entries in the prison logbook and specifically observed that Pendergrass had made an entry indicating a tour in the logbook on the date of the incident. The government used this testimony to help establish its position that Pendergrass had lied about performing three tours of the floor during his August 18 shift. Pendergrass asserts that Difo's testimony was tainted by his prior interview of Pendergrass and that trial counsel should have alerted the court to the potential *Kastigar* violation prior to the end of trial. Trial counsel first raised the issue and requested a hearing after trial.

At the sentencing hearing, the district court heard argument on Pendergrass's request for a hearing and found that he had waived the argument by not raising it earlier. However, the court also held that, even if the issue had not been waived, "any error in admitting testimony informed by defendant's interview is harmless beyond a reasonable doubt." App. 243. We agree and

4

conclude that, even assuming *arguendo* that Pendergrass's trial counsel's failure to raise the *Kastigar* issue earlier fell below an objective standard of reasonableness, the failure did not prejudice Pendergrass. The vast majority of Difo's testimony was general in nature and could have been provided by other prison officials. Even his conclusion that Pendergrass had written in the logbook was based on his general testimony that supervisors' entries in the logbook are written in red. There is no indication that Difo's interview with Pendergrass in any way steered his testimony. For these reasons, we conclude that it is beyond any doubt that the failure to object to Difo's testimony on *Kastigar* grounds did not prejudice Pendergrass at trial. Accordingly, we conclude that his ineffective assistance of counsel claim as it relates to a possible *Kastigar* violation is without merit.

Pendergrass next challenges his conviction on the basis that the district court improperly instructed the jury. To challenge a jury instruction, "a defendant must demonstrate both error and ensuing prejudice." *United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009) (quoting *United States v. Quinones*, 511 F.3d 289, 313–14 (2d Cir. 2007)). He must show that the instruction he requested is "legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Doyle*, 130 F.3d 523, 540 (2d Cir. 1997) (quoting *United States v. Vasquez*, 82 F.3d 574, 577 (2d Cir. 1996)).

In reviewing jury instructions, we also review the challenged language in the context of the entire charge and discern whether the instruction "delivered a correct interpretation of the law." *United States v. Carr*, 880 F.2d 1550, 1555 (2d Cir. 1989) (quoting *California v. Brown*, 479 U.S. 538, 541 (1987)). The issue is not whether the district court included specific words in its instruction, but whether the entire instruction accurately conveyed the law. *See, e.g.*, *United*

5

*States v. Mulder*, 273 F.3d 91, 105–06 (2d Cir. 2001) (noting that there was no prejudice when the court's instruction was legally correct, even though it omitted the defendant's proposed, and also legally correct, language); *cf. Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (holding that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof," so long as the instructions taken as a whole correctly convey the concept of "reasonable doubt").

Pendergrass challenges the jury instructions on willfulness and conscious avoidance. We will address each in turn. With respect to willfulness, Pendergrass requested that the jury instruction include language explaining that "willfulness" means that the defendant acted "with a bad purpose or evil intent." App. 168. In response, the district court amended its instructions to include the phrase "bad purpose," but not the phrase "evil intent." The relevant portion of the instruction read: "[T]o act . . . willfully means to . . . engage in conduct voluntarily and purposely with the intent to do something the law forbids. That is to say with a bad purpose either to disobey or to disregard the law." App. 178.

Pendergrass contends that the court's omission of the word "evil" essentially lessened the government's burden of proof and "tilt[ed] the litigation from a criminal prosecution toward a medical negligence case." Reply Br. for Defendant-Appellant at 11. In support of this position, he largely relies on *Screws v. United States*, 325 U.S. 91 (1945), in which the Supreme Court noted that "willful," when used in a criminal statute, "'generally means an act done with a bad purpose.' . . . An evil motive to accomplish that which the statute condemns becomes a constituent element of the crime." *Id.* at 101 (quoting *United States v. Murdock*, 290 U.S. 389, 394 (1933)). However, the plain text of *Screws* does not *require* judges to instruct juries using both phrases, "bad purpose" and "evil intent," to adequately define the term "willful," and we

6

know of no authority that supports such an interpretation. In fact, a number of other circuit courts have upheld willfulness instructions pursuant to 18 U.S.C. § 242 that are substantively identical to the instructions delivered in this case. *See e.g.*, *United States v. Johnstone*, 107 F.3d 200, 209–10 (3d Cir. 1997) (approving an instruction that a person acts willfully under 18 U.S.C. § 242 where an act "is done voluntarily and intentionally, and with a specific intent to do something the law forbids, that is, as relevant here, with an intent to violate a protected right"); *United States v. Garza*, 754 F.2d 1202, 1210 (5th Cir. 1985) (approving an instruction that a person acts willfully when "the act was committed voluntarily and purposely with the specific intent to do something the law forbids. That is to say, with a bad purpose either to disobey or to disregard the law."); *United States v. Couch*, 1995 WL 369318, No. 94-3292, at *4 (6th Cir. 1995) (unpublished opinion) (noting that "[n]o further instruction that the accused acted with 'bad or evil intent' is necessary" where the instruction read as follows: "[A]n act is done willfully if it is done voluntarily *and intentionally, and with the specific intent to do something which the law forbids; that is, with an intent to violate a specific protected right.*" (emphasis in original)); *cf. United States v. Pomponio*, 429 U.S. 10, 12–13 (1976) (expressly rejecting an argument that a jury instruction on willfulness for a crime of fraud or false statements under 26 U.S.C. § 7206(1) must include "evil motive" language and upholding a willfulness instruction nearly identical to the instruction used in Pendergrass's case).

Considering the entirety of the willfulness instruction, we conclude that the district court "delivered a correct interpretation of the law." *Carr*, 880 F.2d at 1555 (quoting *Brown*, 479 U.S. at 541). Accordingly, we decline to reverse Pendergrass's conviction on that ground.

Pendergrass's challenge to the conscious avoidance instruction fares no better. Because he did not object to the conscious avoidance instruction below, we engage only in plain error

7

review. *United States v. Crowley*, 318 F.3d 401, 414 (2d Cir. 2003). For an error in a jury instruction to constitute plain error, "it must be a 'clear' or 'obvious' deviation from current law that 'affected the outcome of the district court proceedings.'" *Id.* at 415 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Furthermore, "a reviewing court should only exercise its remedial discretion . . . if the error 'seriously affect[s] the fairness, integrity or public reputation of [the] judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736 (alterations in original)).

The court's conscious avoidance instruction appeared as an aspect of the instruction on deliberate indifference. After instructing the jury that it could satisfy the deliberate indifference element if it found "that the defendant knew of and disregarded Jason Echevarria's serious medical needs," App. 176, the court provided:

> In the alternative this element can be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. That means if you find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth that Jason Echevarria had a serious medical need, then this element may be satisfied.

*Id.* at 176–77. Pendergrass argues that this instruction does not adequately state the law; the government disagrees and argues that the court's instruction, at least, is not a clear deviation from current law.

Nevertheless, we do not need to reach the question of whether the court erred in formulating the instruction on conscious avoidance, because we conclude that any such error would not have affected Pendergrass's substantial rights, nor the fairness, integrity, or public reputation of the proceedings. *Crowley*, 318 F.3d at 415. The clear focus of the prosecution's narrative in its summation and rebuttal was that Pendergrass had actual knowledge of Echevarria's serious medical needs. *See, e.g.*, Tr. 1118 ("You've learned that [Pendergrass] knew that Jason Echevarria was suffering."); *id.* at 1119 ("The defendant knew Jason Echevarria

8

needed urgent medical help, but he ignored his pleas for help and let him suffer . . . ."); *id.* at 1135 ("He knew Jason Echevarria needed help and he chose to ignore him."); *id.* at 1136 (This trial "is about whether the defendant, the man in charge, knew an inmate in the area under his command was sick, knew an inmate in his area of his command needed help and whether he chose to ignore him and the evidence that that is what happened is overwhelming."); *id.* at 1179 ("[T]he defendant had to know that" Echevarria "was not faking it."). Furthermore, there was ample evidence from which the jury could have concluded that Pendergrass had actual knowledge of Echevarria's condition, including the testimony of witnesses who said they told him about Echevarria's serious medical needs after he swallowed a portion of the soap ball, testimony of a pharmacy technician and another inmate who observed that Echevarria clearly needed medical help, and video evidence showing Pendergrass walking over to Echevarria's cell during the time he was suffering, looking into the cell for several seconds, and then walking away.

In light of the government's focus on Pendergrass's knowledge at trial and the significant amount of evidence indicating that Pendergrass actually knew of Echevarria's serious medical condition, any error in the district court's conscious avoidance instruction would not have affected the outcome of the trial, nor Pendergrass's substantial rights. We therefore decline to reverse his conviction on that ground.

Pendergrass's final challenge regards his sentence to 60 months' imprisonment, which he claims is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion, *Gall v. United States*, 552 U.S 38, 51 (2007), and "set aside a district court's substantive determination only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189

9

(2d Cir. 2008) (en banc) (emphasis omitted) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). Pendergrass asserts that his sentence was substantively unreasonable because, *inter alia*, the upper limit of the Guidelines range was 27 months' imprisonment, the incident was generally a "bizarre scenario," he has no prior disciplinary record, and he is the only person being held responsible for a number of failures in the system that contributed to Echevarria's death.

"A district court may not presume that a Guidelines sentence is reasonable . . . ." *Id.* at 189. Rather, the court must conduct an independent review of all the sentencing factors under 18 U.S.C. § 3553(a), including the Guidelines range, and may "impose sentences outside the recommended range." *Id.* However, when the court sentences an individual outside the range, it must still "ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (quoting *Gall*, 552 U.S. at 50).

Here, the district court explained that the upward variance from the Guidelines range was warranted because of Pendergrass's "indifference and callousness," App. 323, and the fact that "[a]s a result of [his] refusal to get Mr. Echevarria the treatment that he required, he needlessly suffered four hours while his insides literally burned, and he ultimately died." App. 324. Although Pendergrass's job may generally have been very difficult, "one thing would not have been difficult, and that was to have allowed Mr. Echevarria to see a doctor." App. 323. The court further noted that Pendergrass not only refused to respond when subordinate correction officers informed him of Echevarria's medical condition, but interfered with their attempts to seek help and then attempted to cover up his actions in the incident report following Echevarria's death. The court also considered the fact that a substantial sentence was warranted for deterrence purposes, given that "civil rights cases like this one are difficult to investigate and to prosecute"

10

and it is important "to let it be known that such criminal indifference and cruelty will not be tolerated." App. 325–26.

Because the district court carefully considered the relevant factors under 18 U.S.C. § 3553(a) and provided reasonable justifications for the upward departure from the Guidelines range, we conclude the court's sentence of 60 months' imprisonment was "within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (quoting *Rigas*, 490 F.3d at 238). Accordingly, we affirm the sentence imposed by the district court.

We have considered all of Pendergrass's remaining arguments on this appeal and find that they lack merit. For these reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK,