**Rosetta McKINZY, Petitioner,**

v.

**Louie L. WAINWRIGHT, Respondent.**

**No. 82–6013.**

United States Court of Appeals, Eleventh Circuit.

Nov. 21, 1983.

Elliot H. Scherker, Asst. Public Defender, Miami, Fla., for petitioner.

Calianne P. Lantz, Asst. Atty. Gen., Miami, Fla., for respondent.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS [*], District Judge.

FAY, Circuit Judge:

Appellant, Rosetta McKinzy, was convicted of second degree murder in the Circuit Court of Dade County, Florida. Before trial, defense counsel requested disclosure of a key juvenile witness' juvenile record. The trial judge denied disclosure and also prohibited cross examination about the juvenile record. After exhausting her state remedies, appellant applied for habeas corpus relief to the United States District Court for the Southern District of Florida claiming denial of her sixth amendment right to cross examine witnesses against her. This appeal is from the district court's denial of relief. We reverse and remand to the district court with instructions to arrange for a hearing to develop the necessary facts to determine whether the appellant's constitutional right to effective cross examination was abridged.

The only issue in this appeal is whether the sixth amendment right of confrontation encompasses the right to impeach a juvenile witness on cross examination with questions about the juvenile's record. The State contends that the trial judge properly followed Florida laws prohibiting disclosure of [1] and cross examination about [2] juvenile proceedings. Appellant asserts that the trial judge's denial of a motion for disclosure of juvenile records and his refusal to allow cross examination about the witness' possible motives for testifying violated her sixth amendment rights based on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

At trial, appellant admitted the charges of stabbing filed against her and pleaded self-defense. The sole eye witness to the incident was a fifteen-year-old girl. The juvenile testified that the decedent was just standing there, without a weapon, when McKinzy stabbed him in the chest, thus refuting the self-defense plea. Before trial, defense counsel learned that the juvenile witness had been arrested on unrelated criminal charges.[3] Defense counsel filed a motion for disclosure of the juvenile's rec-

---

[*] Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Fla.Stat. § 39.12 (1981).

2. Fla.Stat. § 90.610(1)(b) (1981).

3. The record does not disclose how defense counsel came to know of the juvenile's arrest. Trial counsel stated at the hearing on the motion to compel disclosure that he had been told that the juvenile witness was arrested for armed robbery. He also stated that his attempts to gain access to the juvenile records through the clerk's office were refused. App. to Petitioner's Brief Vol. II, 8–9. The state trial transcript is not part of the official record in this appeal; however, it is appended to petitioner's brief.

ord, asserting that this information would be necessary to impeach her on cross examination. It was argued that the juvenile proceedings may have formed a motive for the witness to tailor her testimony to please the state. The witness may have had an expectation of favorable disposition of her own proceedings if she cooperated. The trial judge denied the motion for disclosure ruling that the juvenile's record was confidential under the Florida Statutes.[4] Relying on Florida Statute § 90.610(1)(b), which prohibits impeaching a juvenile witness by reference to juvenile adjudications, the trial judge refused to allow defense counsel to pursue this line of questioning. The motion was renewed at trial and again just before the juvenile witness testified. In all three instances the defense counsel cited to *Davis v. Alaska, supra,* and three times the trial judge denied the request.[5] In compliance with the trial judge's ruling,[6] defense counsel limited cross examination impeachment to prior inconsistent statements. The questions that might have established a motive for the witness to try and please the state were entirely unexplored.

The trial judge did not know the particulars of the juvenile witness' brush with the law as he never inquired about the juvenile's record. The juvenile witness' record and the facts surrounding her adjudication are not in the record before us. On direct appeal, the Third District Court of Appeal of Florida remanded to the trial judge to make factual findings. The trial judge's

4. App. to Petitioner's Brief Vol. II, at 13. During the motion hearing defense counsel explained that the cross examination would explore whether the witness cooperated with the state and "in return for that, gave certain testimony." *Id.* at 11. The Florida juvenile justice laws contemplate sufficient flexibility and discretionary authority to make a promise of leniency possible. *See, e.g.,* Fla.Stat. Ch. 39 (state attorney must be given notice of juvenile arrests and has discretion to request waiver to adult prosecution); *Id.* Ch. 959 (juvenile sentences range from incarceration to at-home occasional supervision).

5. App. to Petitioner's Brief Vol. I at 18 and 119, Vol. II at 11.

6. The State argues that the judge's ruling that the juvenile record would not be disclosed did not prohibit cross examination into the witness' testimonial motive. It is true that defense counsel could have conducted examination of the witness' motives without revealing the juvenile record to the jury; however, the trial judge also ruled the cross examination impermissible. The following excerpt occurred as defense counsel renewed the motion for disclosure just prior to the juvenile witness' testimony.

[Defense Counsel] I'd like to ask [the juvenile witness] is in fact whether or not she was ever adjudicated for the crime of strong-arm robbery or robbery, or in fact the question being whether she was ever adjudicated as a juvenile.
THE COURT: No, I won't permit that question.
\* \* \* \* \* \*
[Defense Counsel]: Judge, for the record, I would rely on the case of Davis versus Alaska. I recall the State of Florida has likewise, and I would also like to put on the record—
THE COURT: And furthermore, it's not—it doesn't in any way, in my opinion, impeach the testimony of this witness to something that happened after the events to which she's testified to. How would it affect her credibility?
[Prosecutor]: And more importantly after she stepped forward and gave a sworn deposition to the defense.
[Defense Counsel]: Judge, if [an adult witness] had committed a crime after they'd given a deposition after the incident I would certainly be allowed to ask them.
THE COURT: You're not going to be allowed to do it in this instance because this is something that occurred, the alleged incident in this case occurred prior to the time that this young lady was ever arrested, prior to the time that she ever gave a deposition and the offense for which she was arrested happened subsequent to the time she gave a deposition in this case. I think it's not relevant, it's not material, and *in addition thereto she's a juvenile and in* my opinion juvenile convictions are not admissible in evidence.
[Defense Counsel]: Judge—
[Prosecutor]: You've overruled three times on this issue, can we stop.
[Defense Counsel]: I just want to make it clear for the record that I feel that my client's constitutional rights—this witness has been hindered as to whether or not she was convicted. She's testifying today and that's what I want to do, today.
THE COURT: That wouldn't have any bearing on the facts of the case.
[Thereafter the juvenile witness was called.]
App. to Petitioner's Brief Vol. I at 118–119.

cursory examination of the facts on remand was then affirmed *per curiam.* The most informative portion of this sparse factual record was not developed until the United States Magistrate held a hearing on this habeas corpus petition. The magistrate determined the following chronology of events:

| March 24, 1979 | Death of Willie Spry |
| April 16, 1979 | Information filed against McKinzy |
| May 24, 1979 | [Juvenile witness'] deposition taken by counsel for McKinzy |
| August 6, 1979 | [Juvenile witness] arrested for unrelated armed robbery |
| August 23, 1979 | [Juvenile witness] pleaded guilty |
| September 6, 1979 | [Juvenile witness] adjudicated delinquent |
| September 11, 1979 | [Juvenile witness] sentenced to indeterminate sentence not to exceed 19th birthday |
| October 8, 1979 | [Juvenile witness] placed in "Special Intensive Group" by Dept. of Health and Rehabilitative Services |
| December 4–5, 1979 | McKinzy's trial |
| March, 1980 | [Juvenile witness] furloughed from Special Intensive Group |
| May, 1980 | [Juvenile witness] terminated from supervision [7] |

A defendant's sixth amendment right to confront witnesses applies in state as well as federal trials. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right includes the opportunity for effective cross examination and is one of the minimum essentials for a fair trial. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1972), *citing In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

The Supreme Court explained in *Davis* that: "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." 415 U.S. at 317, 94 S.Ct. at 1110 (citations omitted). When a witness is in government custody it is proper to ask if his testimony is given under the promise or expectation of favorable treatment in his own criminal matters. *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

"[C]ross-examination of a witness in matters pertinent to his credibility ought to be given the largest possible scope." *United States v. Mayer,* 556 F.2d 245, 248

(5th Cir.1977) *quoting United States v. Partin,* 493 F.2d 750, 763 (5th Cir.1974), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977) *quoting McConnell v. United States,* 393 F.2d 404, 406 (5th Cir. 1968). It is error to prevent cross examination of the witness' possible motives to shade his testimony to please state authorities who may have control over the witness' own criminal disposition. *Greene v. Wainwright,* 634 F.2d 272 (5th Cir.1981); *United States v. Mayer,* 556 F.2d 245 (5th Cir.1977); *United States v. Brown,* 546 F.2d 166 (5th Cir.1977).

The Fifth Circuit has repeatedly recognized the particular need for full cross examination of the state's star witness. *United States v. Barrentine,* 591 F.2d 1069, 1081 (5th Cir.), *cert. denied,* 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979); *Beaudine v. United States,* 368 F.2d 417, 424 (5th Cir.1966); *Grant v. United States,* 368 F.2d 658, 661 (5th Cir.1966). These Fifth Circuit cases decided before October 1, 1982, are binding precedent on this panel. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). In this case, the juvenile was the only eye witness to the actual stabbing. Her testimony was important to dispelling the claim of self-defense. Thus the opportunity for effective cross examination about possible bias was important.

The Supreme Court clearly decided the balance between a defendant's interest in effective cross examination and the state's interest in the confidentiality of juvenile records. Therefore, we only apply the law of *Davis v. Alaska, supra,* to these facts. In *Davis,* the key prosecution witness was a seventeen-year-old boy who was on probation by a juvenile court after having been adjudicated delinquent. *Id.* 415 U.S. at 311, 94 S.Ct. at 1107. Relying on a state statute similar to the Florida Statute in this case,[8] the state trial judge prevented any evidence of the juvenile adjudication and parole to be admitted during cross examination. The evidence would have been used to impeach the witness' motive for testifying by show-

---

7. R.Vol. I at 87.

8. Alaska Stat. § 47.10.080 (1971).

ing he may have been promised leniency. The Supreme Court reversed, and established that the sixth amendment right of confrontation is not limited by state laws protecting the confidentiality of juvenile records. In addressing the effect of the state statutes, the Court noted:

> The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.

*Id.* at 320, 94 S.Ct. at 1112.

The sixth amendment rights established in *Davis* apply here. The juvenile witness' record must be disclosed to defense counsel. At the time of trial defense counsel did not even know what charges had been brought against the witness or if the charges had reached adjudication. Only through informed evaluation of the juvenile's record can defense counsel decide whether to explore it on cross examination. In *United States v. Lindstrom,* 698 F.2d 1154, 1159 (11th Cir.1983) a panel of this circuit similarly ruled it was reversible error to deny defense counsel access to the psychiatric records of a key state witness. It was error to deny defense counsel's requests for disclosure.

The court too must know all the facts before ruling on the scope of cross examination. It is within the trial judge's discretion to determine which questions will be permitted on cross examination; "[h]owever, this discretion must give due regard to the Sixth Amendment's right of confrontation." *United States v. Crumley,* 565 F.2d 945, 949 (5th Cir.1978). Only then will the court be able to properly guide those inquiries relative to the witness' credibility.

In the instant case, the state trial judge and the federal district court found that *Davis* was inapplicable because the juvenile witness had been deposed prior to her arrest on the unrelated criminal charges. This is not an appropriate basis for distinguishing *Davis.* The rule of *Davis* applies if any facts could be adduced that might suggest to the jury a motive for the juvenile witness to testify favorably for the state. *See Burr v. Sullivan,* 618 F.2d 583 (9th Cir.1980). It is also improper to rely upon the earlier inconsistent deposition to prevent full cross examination into motives for testifying. The fact that the earlier deposition was inconsistent may make motive inquiries more relevant. Further, the unconstitutional limit of cross examination is not cured simply by acknowledging that other means of impeachment were possible and permitted.

We do not know from the record whether any state agency still had discretion in the disposition or continued custody of the juvenile witness. Indeed, the trial judge ruled the motive inquiry "not relevant" without ever learning the facts.[9] Of course, the sixth amendment only protects cross examination that is relevant. *Green v. Wainwright,* 634 F.2d 272, 275 (5th Cir. 1981); *United States v. Love,* 599 F.2d 107, 108 (5th Cir.), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312 (1979). The Supreme Court in *Davis* explained:

> The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore Evidence § 940, p. 775 (Chadbourn rev. 1970). 415 U.S. at 316–317, 94 S.Ct. at 1110–1111.

*Davis* indicates that inquiries into the motive for the juvenile witness' testimony was probably relevant. If it was relevant, then state confidentiality laws must yield to the sixth amendment right of confrontation. From the magistrate's findings, it seems that the juvenile witness may have been in custody when she testified. If she was subject to state influence, then cross exami-

---

9. App. to Petitioner's Brief Vol. I at 119.

nation should have been allowed. We cannot determine from the record if cross examination about the juvenile proceeding would have been relevant to showing bias. Therefore, we remand to the district court for a full evidentiary hearing [10] to evaluate the relationship between this juvenile witness and the state authorities. The court's inquiry into the juvenile's record should include (but not be limited to) the following questions: What were the conditions of her indeterminate sentence? Did she have an expectation of leniency if she testified? [11] Was she reporting to any state officer? If so, when and how often? Did she ever discuss the subpoena and her testimony with any state officer? If so, what was the substance of that conversation? Did she ever discuss her deposition with any state officer? Did she ever discuss her conversation with another state witness with any officer? When did she apply for early release from the probation terms?

Although unlikely, the facts learned on remand may show that the requested cross examination would not have been relevant to suggest bias to the jury. If so, then the questions were properly prohibited. As *Davis* suggests, the sixth amendment does not unseat state confidentiality laws absent a showing of relevancy. Once the facts are gathered, the district court will be able to rule on whether this cross examination was relevant and therefore unconstitutionally excluded.

REVERSED and REMANDED.

**10.** On remand, the district court should take whatever measures it finds appropriate to protect the juvenile witness' confidential records. It may be that the evidentiary hearing should be conducted *in camera*.

**11.** At the state court hearing on the motion for disclosure the prosecutor stated that "I did not interfere in any way with the juvenile's prosecution. I never spoke to the prosecutor from our office in the juvenile division in any attempt to delay him from taking a course of action against the girl and the entire process of the proceedings against her were done out of our juvenile division." App.R.Vol. II at 11. This is the only evidence heard about possible state influence. The prosecutor's statements alone do not foreclose the possibility of influence by other state officers involved in the juvenile process.