UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy Lee BURKE, Defendant-Appellant.

No. 83–8306.

United States Court of Appeals,
Eleventh Circuit.

Aug. 13, 1984.

Victoria D. Little, Decatur, Ga., for defendant-appellant.

Edgar W. Ennis, Jr., Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and GARZA *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Appellant, Roy Lee Burke, appeals his conviction for conspiracy to harbor and harboring a federal fugitive, in violation of 18 U.S.C.A. § 371 (West 1966) and 18 U.S.C.A. § 1072 (West 1976). We affirm.

On September 1, 1981, Lawrence Burhoe escaped from a Massachusetts prison. After traveling to Rhode Island to meet his

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

girl friend, Kathy Griffin, who returned to Rhode Island from Oregon, they proceeded to Clarkesville, Georgia. At Clarkesville, they stayed for several hours with Roy Lee Burke's brother, Lawrence, before going to a motel. The next day, Burhoe and Griffin returned to Lawrence Burke's house, and Roy Lee guided them to a cabin in Franklin County, Georgia.

On November 22, 1981, Patrick John O'Shea, a convicted murderer, escaped from federal correctional officers and fled to Georgia. He also went to the house where Roy Lee Burke had hidden Burhoe. Roy Lee Burke drove Griffin, Burhoe, and O'Shea to a new hideout after Burhoe and O'Shea tied up two Georgia police officers who had discovered them. Burhoe, Griffin, and O'Shea remained at the new hideout for several days before Burhoe and O'Shea fled the state of Georgia. Griffin remained in Georgia. In February, 1982, federal agents captured Burhoe in Oregon. In July, 1982, federal agents also captured O'Shea in Oregon.

Roy Lee Burke, the appellant, was convicted of conspiracy to harbor a federal fugitive and harboring a federal fugitive.

In this appeal, Burke claims: (1) the district court unduly restricted his cross-examination of several prosecution witnesses; (2) the district court abused its discretion in denying his request for a *Jackson v. Denno* hearing to determine the voluntariness of Burke's admissions to Kenneth Halpin while they were in jail; (3) the identification testimony of Kathy Gallagher and Wanda Capps, prosecution witnesses, was improperly admitted and was tainted; and (4) the district court erred in admitting the "extrinsic offense" testimony of Joseph Brouillard.

1. Did the District Court Abuse Its Discretion In Restricting Burke's Cross-Examination of Certain Prosecutorial Witnesses?

Burke contends the district court impermissibly restricted his cross-examination of four prosecution witnesses: Kathleen Griffin, Steve Durham, Kenneth Halpin, and Joseph Brouillard. The United States contends the district court acted properly in sustaining the government's objections to several irrelevant and immaterial questions Burke's lawyer asked the four witnesses on cross-examination.

■ The district court has discretionary authority to limit cross-examination. *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *United States v. Ramirez*, 622 F.2d 898, 899 (5th Cir.1980). The district court's limiting of cross-examination will not be disturbed unless an abuse of discretion is shown. *Ramirez*, 622 F.2d at 899. A district court, however, must permit sufficient cross-examination to satisfy the confrontation clause of the sixth amendment. *Davis v. Alaska*, 415 U.S. 308, 315–18, 94 S.Ct. 1105, 1109–11, 39 L.Ed.2d 347 (1974); *United States v. Elliott*, 571 F.2d 880, 908 (5th Cir.), *cert. denied sub nom Hawkins v. U.S.*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). The sixth amendment confrontation clause is satisfied where sufficient information is elicited from the witness from which the jury can adequately gauge the witnesses' credibility. *Davis v. Alaska*, 415 U.S. at 315–16, 94 S.Ct. at 1109–10. *See also United States v. Bulman*, 667 F.2d 1374, 1381 n. 9 (11th Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982).

■ Our review of the record indicates that the district court permitted sufficient cross-examination of Kathleen Griffin. Burke's lawyer established that Griffin was testifying under a grant of immunity and that she had received money from the government. Burke's lawyer also established that Griffin participated in the "witness protection program." Although the district court prohibited other questions, the court allowed adequate cross-examination of Griffin to enable the jury to gauge her credibility.

■ Burke also claims the district court did not permit adequate cross-examination of Steve Durham to determine whether state authorities had promised Durham im-

munity for testifying. The record fails to support Burke's claim. With the aid of the district court, Burke's lawyer elicited all the information concerning alleged deals the South Carolina authorities made with Durham. The cross-examination of Steve Durham revealed sufficient information to appraise the jury of any motive or bias on his part. The sixth amendment, therefore, was satisfied.

■ Burke also contends that he was prohibited on cross-examination from determining whether federal officers placed Kenneth Halpin in the Jones County Jail to obtain information from other inmates. The district court permitted extensive cross-examination of Halpin to reveal whether federal officers had intentionally placed Halpin in the same jail cell with him to extract information from him and other prisoners. No such intentional conduct was shown. Halpin's cross-examination, therefore, satisfied the sixth amendment, even though it did not produce the desired results.

■ Finally, Burke asserts that the district court prevented him from inquiring about Joseph Brouillard's motive for testifying. The record reveals that Brouillard's cross-examination was sufficient for the jury to determine any motive, bias, or prejudice on his part. His cross-examination satisfied the sixth amendment.

2. Whether the District Court Properly Denied Burke's Request for a *"Jackson v. Denno"* Hearing as to the Admissibility of Kenneth Halpin's Testimony.

■ The United States Marshals Service housed both Kenneth Halpin and Roy Lee Burke in the Jones County Jail at the same time. During their stay, Burke made several admissions to Halpin which Halpin testified to at Burke's trial. Burke's lawyer requested a hearing outside the jury's presence to determine the voluntariness of Burke's admissions to Halpin. The district court denied the request.

A voluntariness hearing is not required under these circumstances. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). It is clear that the government did not use Halpin to elicit the information from Burke. Accordingly, the district court properly admitted Halpin's testimony.

3. Whether the District Court Properly Admitted the Identification Testimony of Kathy Gallagher and Wanda Capps.

■ Kathy Gallagher testified that two men flew on an airplane into the Hendersonville, North Carolina, airport where she worked, and she transported them by automobile to the Holiday Inn in Hendersonville. She testified that one of the men was sitting beside her in the automobile and she closely observed him. After deputy United States marshals interviewed her and showed her photographs of Burke and O'Shea, Gallagher identified Burke and O'Shea as the two men at the Hendersonville airport. Gallagher further testified that prior to seeing the photographs of O'Shea, she had seen photographs of other people whom she could not identify. Burke contends that Gallagher's in-court identification of O'Shea was the product of an impermissibly suggestive identification procedure and, therefore, invalid.

"[C]onvictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside ... only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Considering the totality of the circumstances surrounding the identification procedure, we find no due process violation. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The witness was shown numerous photographs over the course of several days in an effort to determine who arrived with Burke in the airplane. The government did

not utilize an impermissibly suggestive photographic identification procedure. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (witness was shown too few photographs); *Neil v. Biggers,* 409 U.S. 188, 195, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972) (identification made after one-on-one confrontation); *Simmons v. United States,* 390 U.S. 377, 386 n. 6, 88 S.Ct. 967, 972 n. 6, 19 L.Ed.2d 1247 (1968) (photographs unduly emphasized the person to be identified).

Wanda Capps was a waitress at a restaurant located adjacent to the Holiday Inn in Hendersonville, North Carolina. On April 20, 1982, a deputy United States marshal showed Capps a wanted poster of O'Shea. Capps immediately recognized O'Shea as the large man who had entered the restaurant and had a cup of coffee one evening in February. Before showing Capps the poster, the deputy marshal folded it and covered the descriptive data with his hand so that only O'Shea's photograph was visible.

Since this identification procedure used only one photograph, it was unnecessarily suggestive. *Manson v. Brathwaite,* 432 U.S. 98, 109–10, 97 S.Ct. 2243, 2250, 53 L.Ed.2d 140 (1977). We must determine, therefore, whether the identification was reliable. *Manson,* 432 U.S. at 109–14, 97 S.Ct. at 2250–2251. In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court set out five factors to determine the admissibility of identification testimony based on a prior confrontation. These factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil,* 409 U.S. at 199–200, 93 S.Ct. at 382.

After applying the five factors to Capps's identification, we hold that her identification was reliable. Capps could not know that O'Shea was a fugitive when he came into the restaurant; however, O'Shea was in Capps's presence long enough for her to closely observe him. Capps paid attention to O'Shea because he was one of the few customers in the restaurant. Capps described O'Shea's physical features, including his tattoos, and she was positive of her identification. Approximately two months elapsed between the first meeting and the confrontation. These factors support the reliability of Capps's identification of O'Shea. The district court acted properly in allowing the identification into evidence.[1]

4. Whether the District Court Properly Admitted Evidence of a Prior Act of Harboring as "Extrinsic Offense Evidence."

Burke contends that the district court improperly admitted Joseph Brouillard's extrinsic offense testimony declaring that Burke had provided Brouillard with shelter and false identification knowing that Brouillard was a fugitive from the state of Massachusetts. The district court permitted the testimony pursuant to Federal Rule of Evidence 404(b). In *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the Fifth Circuit held that extrinsic offense evidence is admissible if the evidence is pertinent to an issue other than the defendant's character, the evidence's probative value outweighs its prejudicial effect, and the requirements of rule 403 are satisfied. *Beechum,* 582 F.2d at 910–11.

In a conspiracy case, a defendant's plea of not guilty places his intent at issue, and it remains at issue unless the defendant takes affirmative steps to remove it, such

1. Burke also claims the in-court identification of O'Shea by Griffin and Capps was tainted by an encounter among O'Shea, Griffin, and Capps outside the courtroom. Griffin and Capps observed O'Shea surrounded by federal marshals before he entered the courtroom. While this confrontation was unfortunate, it fails to taint Griffin and Capps's in-court identification of O'Shea.

as by stipulation. *United States v. Roberts,* 619 F.2d 379, 383 (5th Cir.1980). Since intent was at issue in this case, Brouillard's testimony related to an issue other than Burke's character, and the probative value of the testimony outweighed its prejudicial effect. The district court, therefore, properly admitted Brouillard's testimony.

For the foregoing reasons, the decision of the district court is affirmed.

AFFIRMED.