Edward WASKO, Petitioner,

v.

Richard DUGGER, Secretary, Department of Corrections, State of Florida, Respondent.

No. 90–0312–CIV.

United States District Court, S.D. Florida.

April 2, 1991.

Elliott Scherker, Asst. Public Defender, Miami, Fla., for petitioner.

Julie S. Thorton, Dept. of Legal Affairs, Miami, Fla., for respondent.

## MEMORANDUM ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

NESBITT, District Judge.

Edward Wasko, a state prisoner presently serving a life sentence for first-degree murder, petitions this Court for a writ of habeas corpus. The petition presents the question of whether a defendant's sixth amendment right to confront the witnesses against him is violated if he is forbidden from inquiring into the terms of a plea agreement between the state and a cooperating accomplice who is called by the defendant to testify as an adverse witness and whose credibility is impeached by other means. Finding that Petitioner's confrontation clause rights have been violated, but that the error is harmless, the Court DENIES the petition for writ of habeas corpus.

### FACTS and PROCEDURAL HISTORY

The following facts are drawn principally from the opinion of the Florida Supreme Court:

On October 14, 1982, Staci Weinstein, a ten-year old girl, was found dead in her bedroom at her father's home in North Miami Beach, Florida. She had been beat-

en and sexually abused. A police investigation established that a "Stanley Steemer" carpet cleaning truck had been in the neighborhood the afternoon of the murder. The police initially questioned Petitioner and John Pierson, the two Stanley Steemer employees using the truck that day. Because the physical evidence implicated Pierson, the investigation eventually centered on him. However, investigators believed Petitioner to be a valuable witness, and they traveled to Ohio to question him. Wasko was questioned intensively for approximately twenty-two hours over three evenings and two days. Near the end of this questioning, Petitioner confessed to having participated with Pierson in the homicide, and he then proceeded to recount several different versions of his involvement in the murder. Investigators taped and prepared a transcript of one version of his confession, to which Petitioner made corrections prior to signing.

Pursuant to a plea agreement, Pierson pled guilty to 2nd–degree murder, attempted sexual battery, and burglary, and was sentenced to seventeen years imprisonment, with the understanding that, if necessary, he would testify against Petitioner.

At Petitioner's trial, the state theorized that Petitioner and Pierson together committed the crime. Relying principally on Petitioner's confession, the state emphasized that Petitioner possessed knowledge of details of the crime that had not been made public, willingly agreed to respond to questioning, was offered food and rest on several occasions during the interrogation, and did not complain about his treatment. The state also presented corroborating evidence placing Petitioner in the vicinity of the victim's home near the time it was committed. The state did *not* call Pierson as a witness during their case-in-chief.

The theory of defense was that Pierson committed the crime alone and at a time when Petitioner was working on his truck. Petitioner testified that the investigators coerced his confession by relentlessly interrogating him over many hours, giving him little food and rest, misleading him, supplying him with information about the homicide, and asking him to read into a tape and sign a prepared confession. Counsel for Petitioner also attacked the validity of the confession by pointing to its seemingly incredible assertions and by presenting evidence that Petitioner could not have been in the victim's home for the amount of time necessary to participate in the events as described.

Petitioner called Pierson to testify. Petitioner wished to elicit testimony that Pierson had sexually abused other children, had raped his ex-fiancee, and had been charged with sexual battery, but, on relevancy grounds, the court excluded this testimony from the guilt phase of the trial.[1] After Pierson testified in detail that Petitioner committed the murder and committed it alone, the court declared him an adverse witness. The court permitted Petitioner to impeach Pierson with several inconsistent statements regarding his role in the murder, and with physical evidence contradicting his testimony.

Petitioner was permitted to elicit that Pierson had pled guilty, but the trial court refused to allow him to elicit that Pierson had pled guilty to the lesser offense of second-degree murder, that he had been sentenced to seventeen years,[2] that he hoped to be released in eight to ten years,[3] that an unrelated rape case brought against him had been dismissed, and that he had agreed to testify for the prosecution if necessary.

After deliberating for eighteen hours, the jury found Petitioner guilty of first-degree murder, burglary with a firearm, and attempted sexual battery.[4] On appeal, the

---

1. Petitioner does not challenge this ruling.

2. Pierson had been sentenced by a different judge.

3. Pierson has been released from prison during the pendency of this action.

4. During the sentencing phase, Petitioner was permitted to elicit testimony about Pierson's plea agreement and about the past sexual battery charges. After deliberating less than one hour, the jury unanimously recommended that Petitioner be sentenced to life imprisonment. The trial judge overrode this recommendation and sentenced Petitioner to death.

Florida Supreme Court affirmed Petitioner's convictions.[5] *Wasko v. State*, 505 So.2d 1314 (Fla.1987). The court dismissed the claim that the trial judge should have permitted Petitioner to elicit the specific terms of Pierson's plea agreement with the state, holding that the judge's ruling was correct because Pierson had been called by Petitioner and not by the prosecution. The Florida Supreme Court's entire analysis of this issue consisted of the following:

> If Pierson had been the state's witness, the terms of the plea agreement might have been admissible to show bias or motive. Pierson, however, testified as [Petitioner's] witness, not the state's. We agree that Pierson's plea agreement was irrelevant in this instance and hold that [Petitioner] has failed to show an abuse of the trial court's discretion.

*Id.* 505 So.2d at 1316–17. The trial court's prohibition of any inquiry into the terms of the plea agreement between Pierson and the state forms the basis of Petitioner's confrontation clause claim.[6]

## DISCUSSION

### A. *Legal Standard*

■ The sixth amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The main and essential purpose of the right of confrontation, applicable to the states, is to secure for the defendant the opportunity for effective cross-examination, *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)); *Francis v. Dugger*, 908 F.2d 696, 701 (11th Cir.1990), and the exposure of a witness' possible bias or motivation in testifying, including the existence of a plea agreement, is "a proper and

important function of [this] constitutionally protected right." *Delaware v. Van Arsdall*, 106 S.Ct. at 1435 (quoting *Davis v. Alaska*, 94 S.Ct. at 1110); *United States v. De Parias*, 805 F.2d 1447, 1452 (11th Cir. 1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987).

■ Of course, a defendant is not entitled to limitless cross-examination concerning potential bias. Rather, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 106 S.Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (emphasis in original)). Trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about relevance. *Delaware v. Van Arsdall*, 106 S.Ct. at 1435; *Francis v. Dugger*, 908 F.2d at 702 (quoting *Van Arsdall*, 106 S.Ct. at 1435). Nevertheless, this latitude comes into play only after the trial court has permitted cross-examination sufficient to satisfy the sixth amendment. *United States v. Beale*, 921 F.2d 1412, 1424 (11th Cir.1991); *United States v. Moody*, 903 F.2d 321, 329 n. 7 (5th Cir.1990); *United States v. Haimowitz*, 706 F.2d 1549, 1559 (11th Cir.1983), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *Greene v. Wainwright*, 634 F.2d 272, 275 (5th Cir.1981).

As a preliminary matter, the parties disagree on the standard applicable to a petition for writ of habeas corpus alleging a denial of the right to confrontation in a state criminal trial. Respondent argues that a habeas petitioner claiming a confrontation violation is not entitled to relief unless the state trial court's evidentiary rul-

---

**5.** The court overturned the death sentence.

**6.** The Court referred this petition to United States Magistrate William C. Turnoff, who has filed a Report recommending that the petition be denied. The Magistrate concluded that the "jury had sufficient information to adequately assess Pierson's credibility as a witness" and therefore that the failure to permit disclosure of

the specific terms of the plea agreement was not a "material factor" as defined by *Boykins v. Wainwright*, 737 F.2d 1539 (11th Cir.1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). *See* Magistrate's Report and Recommendation at 9. Because the Magistrate applied an incorrect legal standard to Petitioner's claim, the Court declines to adopt the Report and Recommendation.

ing renders the criminal proceeding "fundamentally unfair." *See Boykins v. Wainwright,* 737 F.2d 1539, 1544 (11th Cir.1984) ("Fundamental fairness is violated when the evidence excluded is 'material in the sense of a crucial, critical, highly significant factor.'"), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985).

■■■ Petitioner asserts, correctly, that the "fundamental fairness" standard set forth in *Boykins* applies only when a habeas petitioner challenges a state trial court ruling under the due process clause of the fourteenth amendment, not when he alleges a violation of the explicit constitutional right to confront the witnesses against him.[7] A defendant's confrontation clause rights are judged by the same standard whether in a state or federal prosecution, *see Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 1070, 13 L.Ed.2d 923 ("we hold that the right of an accused to be confronted with the witnesses against him must be determined by the same standards whether the right is denied in a federal or state proceeding"); *McKinzy v. Wainwright,* 719 F.2d 1525, 1528 (11th Cir.1983); *see also Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (distinguishing generalized claims falling under fourteenth amendment due process clause from claims of denials of "the benefit of a specific provision of the Bill of Rights"), and federal courts routinely apply a specific, more stringent test to confrontation clause claims brought by habeas petitioners challenging limits on cross-examination of adverse witnesses in their state criminal trials. *See Evans v. McCotter,* 790 F.2d 1232, 1240–41 (5th Cir.1986) (applying different standard to general attack on state evidentiary ruling than to claim of confrontation clause violation based on same ruling); *see also Harper v. Kelly,* 916 F.2d 54, 56–57 (2nd Cir.1990); *Francis v. Dugger,* 908 F.2d 696, 701 (11th Cir.1990); *McKinzy v. Wainwright,* 719 F.2d 1525, 1528 (11th Cir.1983); *Greene v. Wainwright,* 634 F.2d 272, 275 (5th Cir. 1981); *Mitchell v. Hoke,* 745 F.Supp. 874 (E.D.N.Y.1990); *Bagby v. Kuhlman,* 742 F.Supp. 137, 141 (S.D.N.Y.1990). Thus, Respondent cannot hide behind the deferential test applicable to challenges to state trial rulings not impinging upon a specific constitutional right.[8]

Having determined the fundamental fairness standard to be inapplicable, the Court shall address and dismiss the state's two remaining arguments against a finding of constitutional error: (1) as held by the Florida Supreme Court, the prohibited testimony was irrelevant because it came from a witness called by Petitioner, and (2) the jurors had sufficient information to judge Pierson's credibility.

### B. *Relevancy*

■■■ The sixth amendment mandates that a defendant be permitted to inquire into the terms of a plea agreement between the state and an accomplice called by the defendant to testify as an adverse witness. The claim that the omitted cross-examination is irrelevant ignores both logic and the pro-

---

7. For example, in *Boykins, supra,* the petitioner, who at trial raised only the defense of insanity, challenged the state court's exclusion of his doctor's testimony regarding his history of mental illness. Only after emphasizing that the right to present witnesses on one's own behalf stems from the due process clause of the fourteenth amendment did the court apply a deferential standard of review. *Id.* at 1544.

8. There exists an important reason for distinguishing between a generalized claim that a state court's rulings violated a petitioner's right to due process and a claim of a denial of a specific constitutional right. A federal court should defer to the states when reviewing a generalized challenge to the fairness and appropriateness of a state court's interpretation of its own laws and rules of procedure. *See Panza-*

*vecchia v. Wainwright,* 658 F.2d 337, 340 (5th Cir.1981) ("The states exercise supervision of the trial of state created crimes, and federal courts are compelled to defer to a state court's interpretation of its own criminal laws, rules of evidence, and rules of criminal procedure"). However, a claim of a denial of a specific trial right, such as one's right to confront witnesses against him, compels a federal court to exercise its duty to assure that a state-supervised prosecution does not impermissibly infringe upon the rights guaranteed by the Constitution. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) ("When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that [the state] in no way impermissibly infringes them").

nouncements of the Supreme Court. Though trial judges retain wide latitude to exclude marginally irrelevant testimony, *see Delaware v. Van Arsdall*, 106 S.Ct. at 1435 (no confrontation clause violation in excluding bias testimony which is only "marginally relevant"); *Francis v. Dugger*, 908 F.2d 696, 702 (11th Cir.1990) (same), the Supreme Court long ago dismissed the notion that a defendant's right to confront the witnesses "against" him is dependent on the witness having been called by the prosecution. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) ("We reject the notion that [the right of cross-examination and confrontation], a right of such substance in the criminal process, may be governed by that technicality"); *Maness v. Wainwright*, 512 F.2d 88, 91 (5th Cir.1975) ("*Chambers* held that an accused's right to confront witnesses "against" him is not strictly limited to the confrontation of witnesses called by the state"), *cert. dismissed*, 430 U.S. 550, 97 S.Ct. 1593, 51 L.Ed.2d 630 (1977); *see generally* Fed.R. Evid. 607 (credibility of witness may be attacked by party who called him).

In a similar situation, the Fifth Circuit has assumed that a defendant's confrontation rights are unaffected by his having called the witness to testify. In *Evans v. McCotter*, 790 F.2d 1232 (5th Cir.), *cert. denied*, 479 U.S. 922, 107 S.Ct. 327, 93 L.Ed.2d 300 (1986), a defendant in a state capital prosecution called his confederate to testify during the defense's case-in-chief. After the accomplice testified that the defendant committed the crimes, the trial court prohibited the defendant from eliciting testimony that he had pled guilty and had received a life sentence. On review, the Court of Appeals expressly rejected the irrelevancy argument made here by Respondent: "[the defendant's] confrontation clause right is not lessened by the fact that he, rather than the State, called [the witness]: 'the right of confrontation does not depend upon whether the witness was put on the stand by the accused or the prosecution'" *Id.* at 1241 & n. 9 (quoting *United States v. Morgan*, 757 F.2d 1074, 1077 (10th Cir.1985)); *cf. Welcome v. Vincent*, 549 F.2d 853, 858 (2nd Cir.1977).

In finding that the terms of the plea agreement were irrelevant to the issue of Pierson's bias or reason to shade his testimony, the Florida Supreme Court ignored the obvious. Pierson could have believed that he should testify consistently with his prior statement implicating Petitioner: an accomplice of Petitioner, he had pled guilty to second-degree murder in this same case, was receiving both the benefit of a seventeen-year sentence and the opportunity to avoid the risk of a capital prosecution, was testifying in the presence of the same prosecuting authorities who granted him these benefits, had agreed to testify on behalf of the state if necessary, and was hoping to be released within eight to ten years. Thus, Pierson may have viewed the state attorneys as his custodians and as the ones with the power both to influence the decisions of prison authorities and to commence an additional prosecution for perjury. Each of these possibilities alone render the terms of the plea agreement relevant to the issue of bias, and Pierson's status as an adverse defense witness does not diminish the relevancy of the proscribed cross-examination one iota.

This conclusion is not affected by the fact that Pierson had already been sentenced. Though he technically was not testifying in fulfillment of his obligations under the plea agreement, he could have believed that he had a continuing obligation to testify in a manner favorable to the prosecution. *See United States v. Anderson*, 881 F.2d 1128, 1138 (D.C.Cir. 1989) ("the defense may attempt to show government 'conduct which might have led a witness to believe that his prospects for lenient treatment by the government depended on the degree of his cooperation'") (quoting *United States v. Leonard*, 494 F.2d 955, 963 (D.C.Cir.1974)); *Brown v. Dugger*, 831 F.2d 1547, 1556 (11th Cir.1987) (Clark, J., concurring in part) ("What is important is the possibility that a witness is accusing an individual in an effort to please the prosecution"); *United States v. Onori*, 535 F.2d 938, 945 (5th Cir.1976) ("What tells, of course, is not the actual existence of a deal but the witness' belief or disbelief that a deal exists"); *McKinzy v. Wainwright*, 719 F.2d at 1528 (proper to ask

witness in custody if testimony is given under expectation of favorable treatment").

In summary, the Florida Supreme Court erred when it acknowledged that the testimony would have been relevant if Pierson had been called by the prosecution, but was irrelevant because he was called by the defense. The Court's research has uncovered no case holding such core testimony to be irrelevant, and there exists no logical reason why the terms of a co-defendant's plea agreement should be inadmissible to show bias merely because he is called by the defense rather than the prosecution. Pierson's status as an adverse defense in no way affects the relevancy of the terms of his plea bargain, and the Florida Supreme Court's contrary conclusion violates the rule of *Chambers v. Mississippi* and its progeny.

## C. *Other Impeachment*

■ Alternatively, Respondent contends that, so long as other cross-examination attacking a witness' credibility is permitted, the confrontation clause is not violated by a trial court's refusal to permit *any* inquiry into the terms of an accomplice's plea agreement with those authorities prosecuting the defendant.[9] The Court disagrees and holds that, notwithstanding the existence and use of other impeachment material, the failure to permit any relevant inquiry into bias violates the sixth amendment.

The Supreme Court has many times reaffirmed the principle that a criminal defendant states a violation of the confrontation clause by showing that "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could

appropriately draw inferences relating to the reliability of the witness.'" *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1989) (quoting *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)); *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (same); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (same).

Relying on language in *United States v. De Parias*, 805 F.2d 1447 (11th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987), Respondent asks the Court to ignore this clear and unambiguous rule forbidding a complete prohibition of relevant inquiry into bias. In *De Parias*, the Court stated that the standard in reviewing a limitation on cross-examination is whether "the excluded testimony would have given the jury a different impression of the witness' credibility." *Id.* at 1452 (citing *Van Arsdall*, 106 S.Ct. at 1436); *see also United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir.) (confrontation clause satisfied where sufficient information elicited from which jury can adequately gauge witness' credibility), *cert. denied, Garces v. United States*, — U.S. —, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); *United States v. Burke*, 738 F.2d 1225, 1227 (11th Cir.1984) (same). Specifically, Respondent argues that because Pierson was substantially exposed to other means of cross-examination, the limitation on Petitioner's plea agreement inquiry would not have affected the jury's assessment of Pierson's general credibility.[10]

The Court may summarily dismiss this argument, as it has been expressly rejected by the Eleventh Circuit Court of Appeals and implicitly rejected by the Supreme Court and other courts. *See, e.g., Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102

---

**9.** As examples of evidence by which the jury could judge Pierson's credibility, the state points to Pierson's many prior inconsistent statements, to the contradictory physical evidence, and to Pierson's guilty plea.

**10.** Significantly, in *De Parias*, the case upon which Respondent relies, and in *Leavitt*, and *Burke*, the Court of Appeals emphasized that the party complaining about the confrontation violation had been permitted to elicit at least the

general contours of the plea agreement between the government and the witness in question. The finding of no confrontation violation in these cases therefore in no way supports Respondent's interpretation of the "sufficient to adequately judge the credibility of the witness" standard. Rather, they support the conclusion that implicit in this standard is the requirement that a defendant be permitted to inquire into the potential bias of an accomplice cooperating with the government.

L.Ed.2d 513 (1989) (preclusion of inquiry into motive violates confrontation clause notwithstanding existence of permitted cross-examination through prior inconsistent statements); *Delaware v. Van Arsdall,* 106 S.Ct. at 1436; *United States v. Anderson,* 881 F.2d 1128, 1136 (D.C.Cir. 1989) ("cross-examination is permitted not only to impeach the general credibility of the witness, but also to expose 'possible biases, prejudices, or ulterior motives of the witness'") (quoting *Davis v. Alaska,* 94 S.Ct. at 1110); *McKinzy v. Wainwright,* 719 F.2d 1525 (11th Cir.1983) (*"the unconstitutional limit of cross-examination is not cured simply by acknowledging that other means of impeachment were possible and permitted."*) (emphasis added).

Recognizing that defendants are entitled to show the "prototypical form of bias" which may arise from plea agreements between accomplices and prosecutors, courts in the Eleventh Circuit and former Fifth Circuit have on several occasions explicitly set forth the requirement that, in addition to permitting cross-examination so that jurors may receive sufficient information to assess generally the credibility of the witness, defense counsel must be permitted, through examination of the witness, "to make a record from which he could argue why the witness might have been biased." *See United States v. Calle,* 822 F.2d 1016, 1020 (11th Cir.1987); *United States v. Summers,* 598 F.2d 450, 461 (5th Cir.1979); *United States v. Elliott,* 571 F.2d 880, 909 (5th Cir.1978); *see also United States v. Van Dorn,* 925 F.2d 1331 (11th Cir.1991) (confrontation rights infringed unless "the cross-examination conducted by defense counsel ... enable[s] him to make a record from which he could argue why the witness might have been biased.").

Contrary to Respondent's assertion, *Calle, Summers,* and *Elliott* are not part of an "isolated" line of cases imposing an additional and unwarranted requirement. Rather, they merely make explicit what is mandated by the Supreme Court and assumed in other Eleventh Circuit decisions: at least some relevant inquiry into a cooperating accomplice's potential bias in favor of prosecuting authorities *must* be permitted. *See United States v. Van Dorn,* 925 F.2d 1331 (11th Cir.1991); *United States v. Rocha,* 916 F.2d 219 (5th Cir.1990) (confrontation clause *"mandates* that a defendant *must* be permitted to cross-examine a witness to determine if the witness has any biases, prejudices, or ulterior motives that may provide an incentive on the part of the witness to falsify his testimony") (emphasis added); *McKinzy v. Wainwright,* 719 F.2d 1525, 1528 (11th Cir.1983); *United States v. Hall,* 653 F.2d 1002, 1008 (5th Cir.1981) ("[C]ross-examination into any motivation or incentive a witness may have for falsifying his testimony *must* be permitted") (emphasis in original); *United States v. Barrentine,* 591 F.2d 1069, 1081 (5th Cir.), *cert. denied,* 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979).

■ Pierson's relationship to the prosecution renders the trial court's limitation even more problematic, because cross-examination should be given the largest possible scope with regard to the testimony of participants in the crime with which the defendant is charged. *Brown v. Dugger,* 831 F.2d 1547, 1555 (1987) (Clark, J., concurring in part); *United States v. Hall,* 653 F.2d at 1008; *Greene v. Wainwright,* 634 F.2d 272, 276 (5th Cir.1981); *United States v. Barrentine,* 591 F.2d at 1081 ("When the witness ... was an accomplice or participant in the crime for which the defendant is being prosecuted, the importance of full cross-examination to disclose possible bias is necessarily increased"); *United States v. Brown,* 546 F.2d 166, 170 (5th Cir.1977) ("when the witness is an accomplice, wide latitude in cross-examination is generally allowed in order to give opposing counsel the maximum opportunity to test the witness' credibility by exploring his motivation for testifying"); *United States v. Onori,* 535 F.2d 938, 945 (5th Cir.1976); *see also United States v. Roan Eagle,* 867 F.2d 436 (8th Cir.), *cert. denied,* 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989) (accused is entitled to elicit "not only the specific crime to which the co-actor is pleading guilty, but [also] the range of punishment to which the one pleading guilty is exposed to in contrast to what that person knows— or ought to know—is the potential sentence for a conviction following a plea of not guilty").

Here, Petitioner was entirely precluded from making a record from which he could argue that Pierson was biased and was lying about Petitioner's involvement to please the prosecution. He could not elicit testimony that Pierson had pled to a lesser charge, that other serious charges were dropped, that he was sentenced to only seventeen years, that the maximum penalty he otherwise faced was death, and that he had agreed to testify if necessary.

Allowing Petitioner to impeach Pierson by other means simply does not cure this clear constitutional violation. Though the jury may have had sufficient facts to judge generally Pierson's credibility, they had no basis from which to conclude that Pierson had reason to falsely implicate Petitioner in the murder. Had Petitioner been permitted to inquire into the terms of the plea agreement, the jury certainly would have had a significantly *different* impression of the credibility of the claim that Petitioner committed the crime.[11] The trial judge's prohibition of this cross-examination was an error of constitutional magnitude.

### D. *Harmless Error*

■■■■■ The Court's inquiry does not end with a finding of constitutional error, as the improper denial of a defendant's opportunity to impeach a witness for bias is subject to the harmless error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Delaware v. Van Arsdall*, 106 S.Ct. at 1438. To determine whether a confrontation violation is harmless error, a court must analyze five factors: 1) the importance of the witness' testimony to the prosecutor's case; 2) whether the testimony was cumulative; 3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; 4) the extent of cross-examination otherwise permitted; and 5) the overall strength of the prosecution's case. *Id.* Also, an assessment of harmlessness cannot include consideration of whether "the jury's assessment [would have been] unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1989).

■■■■ Having carefully reviewed the entire record, the Court is convinced that the unconstitutional denial of confrontation is harmless beyond a reasonable doubt. As demonstrated by the state's decision not to call Pierson, his testimony was not necessary to the state's case, which relied primarily on Petitioner's damaging and highly inculpatory confession.[12] Though Pierson was the only eyewitness to testify how and by whom the victim was murdered, his testimony was cumulative to Petitioner's own confession. Further, Petitioner was permitted to impeach Pierson with prior inconsistent statements and with contradictory physical evidence. The permitted cross-examination placed the witness' lack of credibility before the jury and allowed counsel to argue that Pierson's assertion that Petitioner committed the crime was entitled to little or no weight.[13]

The Court recognizes that most if not all of the physical evidence pointed to Pierson. However, significant evidence exists which supports the jury's verdict.[14] Though its

---

**11.** Indeed, permitting Petitioner to elicit that Pierson pled guilty without allowing any mention that it was to a lesser charge carrying a substantially shorter maximum sentence may have exacerbated the error. Though it served to impeach Pierson as to his claim that he was uninvolved in the murder, it further hid the reason why he may have falsely implicated Petitioner. Knowing that he had already pled guilty, the jury might have thought that Pierson believed he no longer had anything to gain by falsely implicating Petitioner.

**12.** His appearance and testimony was, however, central to Petitioner's defense, for Petitioner attempted to portray Pierson as an admitted murderer, liar, and child abuser who acted alone.

**13.** As explained above, placing Pierson's general credibility before the jury does not preclude a finding of constitutional error. It does, however, militate in favor of a finding of harmlessness.

**14.** In making this observation, the Court does not imply that the conviction can stand simply because there is sufficient evidence to sustain the verdict. *See Arizona v. Fulminante*, — U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)

reliability was a central issue at trial, the confession is supported by substantial circumstantial evidence, especially Petitioner's knowledge of several unreported facts about the murder. Specifically, Petitioner knew details relating to the clothing worn by the victim,[15] the furnishings and physical interior of her home,[16] the nature of her physical injuries,[17] and that she was hit and shot with a 22–caliber gun. Moreover, circumstantial evidence both placed Petitioner near the victim's home during a one-half hour period when she could have been murdered, and indicated that he knew of the existence of the murder weapon.[18]

The Court recognizes that the existence of a confession does not necessarily lead to a finding of harmlessness. *See Brown v. Dugger*, 831 F.2d 1547, 1558 (11th Cir.1987) (error not harmless notwithstanding signed confession). Nevertheless, the confession remains a powerful and damaging piece of evidence,[19] and its impact would not have been diminished absent the constitutional error in this case. *See Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ("A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.... The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.' ") (quoting *Bruton v. United States*, 391 U.S. 123, 139–40, 88 S.Ct. 1620, 1630, 20 L.Ed.2d 476 (1968)).

In summary, because Pierson was entirely unimportant to the prosecution's case and was impeached through extensive cross-examination in other areas, because the omitted testimony was merely cumulative to Petitioner's own damaging confession, and in light of the other circumstantial evidence supporting the confession and the jury's verdict, the Court concludes that the violation of Petitioner's sixth amendment right to confront Pierson was harmless beyond a reasonable doubt. Accordingly, the petition for writ of habeas corpus is DENIED.

DONE and ORDERED.

---

(noting that a rule allowing affirmance merely if admissible evidence is sufficient to sustain verdict is "much more lenient" than harmless error rule). Rather, it is but one factor supporting the conclusion that the denial of confrontation was harmless beyond a reasonable doubt.

15. Petitioner knew that she had been wearing a light blue top, pink shorts, and no shoes.

16. Petitioner described to investigators the location of the stairwell and the bedroom where the murder occurred.

17. Petitioner knew that the victim had been struck in the head and sexually assaulted but not raped.

18. It was elicited at trial that, some time after he had been questioned about the murder, Pierson approached Petitioner and said that he (Pierson) had not told the investigators about Petitioner's gun.

19. In the version of the confession ultimately transcribed and then reviewed by Petitioner, he admitted witnessing the sexual assault and then giving Pierson the gun and telling him to "finish her off."